**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rio Hatton JONES, Defendant–Appellant.**

No. 92–2117.

United States Court of Appeals,
Tenth Circuit.

July 14, 1993.

William E. Parnall, Albuquerque, NM, for defendant-appellant.

Presiliano A. Torrez, Asst. U.S. Atty., D.N.M. (Don J. Svet, U.S. Atty., also on the brief), for plaintiff-appellee.

Before McKAY, Chief Judge, MOORE and ANDERSON, Circuit Judges.

McKAY, Chief Judge.

Defendant was arrested in Albuquerque, New Mexico, after local police found crack cocaine in the vehicle in which he was a passenger. In the district court, Defendant sought to suppress the crack cocaine as the product of an unconstitutional seizure. When the trial court denied the motion, Defendant entered a conditional plea of guilty to one count of possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1988). The conditional nature of the plea preserved Defendant's right to appeal the suppression issue.

I

In reviewing the denial of a motion to suppress, we apply the clearly erroneous standard to the district court's findings of fact. *United States v. Anderson*, 981 F.2d 1560, 1566 (10th Cir.1992). In addition, we view the evidence on appeal in the light most favorable to the prosecution. *Id.* However, the ultimate determination of whether the police had a reasonable suspicion is a conclusion of law that we review *de novo*. *Id.*

Viewing the evidence in the light most favorable to the prosecution, the facts are as follows: On December 5, 1991, the Albuquerque, New Mexico, police received a report from an apartment manager that one of his tenants had told him two African–American men had pounded hard on the door of a neighbor's apartment. One was holding a gun. The tenant then came on the line and reported the men had left without entering the apartment, driving a black Mercedes westbound. He stated that both were wearing a lot of jewelry, and that one was wearing an expensive purple sweater.

The police dispatcher issued a call for a "1031," which indicates a suspicious person. Shortly thereafter, a motorcycle patrol officer spotted a black Mercedes proceeding south in an area that was a mile and a half west of the site of the disturbance. The officers estimated that the interception site was about five driving minutes from the scene of the incident. The record lacks sufficient detail for us to know with precision the lapsed time between the departure of the car from the apartment to the interception of the car at issue here.

The car that the police intercepted was driven by an African–American man, with another African–American man in the back seat. Prior to stopping the vehicle, the officers also observed a woman and a six- or seven-year-old child in the front seat. Other than the radio report, there was nothing about the appearance or operation of the vehicle that aroused the officers' suspicions or contributed to the justification for the stop.

The officer called for back-up, and when the car stopped in the parking lot of a grocery store, four or five police vehicles converged on the scene. The occupants (who included a second child whom the officers had not previously noticed) were ordered out of the car, and both men were handcuffed. A frisk revealed no weapons. The officers, however, observed through an open car door a clear plastic bag protruding from beneath the center arm rest in the back seat. When one of the officers pulled it out, he discovered that it contained crack cocaine. Defendant, who had been riding in the back seat, was arrested.

The trial court declined to suppress the cocaine. Defendant now appeals, claiming that it was the fruit of an illegal seizure of himself and the vehicle in which he was travelling.

II

The police officers who stopped this car did so on very meager evidence. They knew only that two black men had left a disturbance five minutes earlier in a black

Mercedes. While they had some description of the clothing the men were wearing, they could not see the clothing that the occupants of this vehicle were wearing at the time they initiated the stop. They were not told of any further distinguishing features of the car, such as a partial license plate or a dent. Because of the layout of the streets in that part of Albuquerque, they had no idea in what direction the men were travelling.[1] They were in Albuquerque, a major population center, at 4:00 p.m. on a weekday afternoon. The record contains no evidence suggesting that the area within a five minute drive from the scene of the disturbance was either sparsely populated or lightly driven.

There were many aspects of the vehicle they found which suggested this was not the car they were looking for. They were searching for armed men fleeing the scene of a disturbance. Yet the car they intercepted (a) contained a six- or seven-year-old girl,[2] (b) was not travelling from the direction of the disturbance,[3] (c) was on a street that, by the officers' own admission, could only be reached from the disturbance by a circuitous route, and (d) promptly parked in front of a grocery store.[4]

Nevertheless, the officers singled out this car, out of all the cars in the area, for a massive intrusion based solely on the color and manufacturer of the car, and the fact that it contained two black men. There is no information in the record as to the number of black Mercedes owned by African–Americans in Albuquerque, and we will not speculate as to the statistics.[5] Absent a strong showing, on the record and based on objective statistics, that the sight of two African–Americans in a black Mercedes was a highly unusual event, we cannot sanction the officers' claim that this flimsy evidence provided them with a reasonable suspicion that they had found the car that fled the disturbance.

## III

The officers' actions were problematic for reasons beyond the fatal weakness of the

---

1. While the report stated that the vehicle was heading west and the car in question was found at a location west of the site, the witnesses agree that this is only coincidence. As the police were aware, the car was exiting a cul-de-sac which only exited to the west, and in fact was proceeding southbound when they intercepted it. Thus, given the testimony that a vehicle travelling in Albuquerque at that time of day would travel about a mile and a half in the five minutes that police were searching for it, the car could have been anywhere in a seven square-mile area.

2. We note that it would be unusual, to say the least, to bring two children to an armed confrontation.

3. At the point it was intercepted, the car was travelling south, while the disturbance was to the east.

4. Subsequent to initiating the search, police learned several other things that called into question whether they had found the right car. For example, one of the men reported leaving the scene of the disturbance was described as wearing a purple sweater. Three out of four officers affirmatively stated that none of the men in the car they stopped was wearing such a sweater (one officer had an uncertain memory). Similarly, the officers confirmed that the men they stopped did not have the abundance of jewelry that was seen at the disturbance. Of course, this subsequently discovered information has no bearing on the justification for the seizure of this vehicle.

5. We note, however, that no evidence was presented on the record connecting this car to the prior disturbance. In fact, the evidence presented strongly suggests that the vehicle intercepted by police was actually carrying two men who were bringing a mutual acquaintance, her daughter, and her niece to the grocery store to buy some food.

The prosecution represented to the trial court that, after Defendant was arrested, the original informant viewed a photograph of the Mercedes at issue in that case, and believed it to be the same car as the one he reported. However, given the presence of three people not mentioned by the informant, substantial variances between the informant's description and the appearance of the occupants of this car, see supra note 4, the lack of any attempt on this record to conduct a line-up with the occupants of the car, the uncontradicted testimony by the woman in the car that she was out getting milk for her daughter and her niece at the grocery store at which they stopped, and the lack of any testimonial or physical evidence whatsoever on the record to link this car to the earlier disturbance, it appears, even drawing all inferences in the light most favorable to the government, that we can say only that this car was the same color and model as the car at the disturbance, and that this car had no connection to the earlier incident.

Thus, it would appear that there were at least two black Mercedes driven by African–Americans in Albuquerque on that afternoon.

description of this vehicle and its occupants. Our cases have established that this kind of investigative stop is only justified if the officers have "a reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." *United States v. Recalde,* 761 F.2d 1448, 1454 (10th Cir. 1985). The inferences the officers had to make to reach that conclusion were quite troubling.

First, the information that the police were acting on came from an informant with whom they had no experience. The police made no observations of suspicious behavior that corroborated the report.[6] The tip given in this case was only marginally above the minimum required by the Supreme Court in *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

Second, the tip stated that one of the men involved in the disturbance was holding a gun and that the men were pounding hard on an apartment door. The officers admitted on the stand that they were aware that these actions were not crimes in New Mexico. Further, while the tip did indicate the potential for some kind of altercation at the site of the disturbance, the officers were aware that the vehicle they seized was far from that site, carried a six- or seven-year-old child, and had just parked at a grocery store. Therefore, even assuming *arguendo* that the officers had found the right car, any inference that Defendant and his companions had been, were currently, or were about to be engaged in criminal activity was far-fetched. The fact that crack was found in the car was blind luck.

In order to conclude that an investigatory stop was in order the police would have had to infer (a) that they had found the car that they were looking for; (b) that the report of the disturbance was reliable; and (c) that the men who left the scene of the disturbance had been, were, or were about to be engaged in criminal activity. The stop was only justified if all of these inferences, taken together, were reasonable.

While multiple inferences are not per se impermissible, courts have long been cautious about accepting conclusions that were arrived at "by piling inference upon inference." *Direct Sales Co. v. United States,* 319 U.S. 703, 711, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674 (1943).[7] This is precisely what the police did in this case. Of the three inferences necessary to reach a conclusion of reasonable suspicion, the first was fatal, and all three were weak. Looking to the three inferences piled on top of each other, the support for the ultimate conclusion that an investigatory stop was justified fell far short of the minimum requirements of the Fourth Amendment.

IV

We do not suggest that the level of the intrusion was inappropriate if the officers indeed had a reasonable suspicion that the vehicle contained armed criminals. But the radical intrusion into the lives of people who were going to the grocery store with two young children underlines the compelling need for courts to strictly apply the requirement that police have reasonable suspicion before they initiate such an intrusion.

The judgment is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.[8]

ANDERSON, Circuit Judge, separately concurring.

I am pleased to concur in the excellent majority opinion in this case, with one caveat. I hope that the police in my neighborhood will continue to have suspicions that a crime

---

6. The only corroboration was the sighting of the Mercedes in which Defendant was travelling in the area about five minutes later.

7. Thus, as this court stated in another context, "inferences alone may, if reasonable, provide a link in the chain of evidence and constitute in that regard substantial evidence. *But an inference cannot be piled upon an inference, and then another inference upon that,* as such inferences are unreasonable and cannot be considered as substantial evidence." *NLRB v. Meinholdt Mfg. Inc.,* 451 F.2d 737, 738 (10th Cir.1972) (quoting *Interlake Iron Corp. v. NLRB,* 131 F.2d 129, 133 (7th Cir.1942)) (emphasis supplied in *Meinholdt Mfg.*).

8. Because of our disposition of this issue, we do not reach Defendant's other contentions of error.

has been or is about to be committed if two people (regardless of race, gender, nationality, religion, etc.), carrying guns, walk up to my door and start pounding on it.