**F I L E D**

**UNITED STATES COURT OF APPEALS**

**February 23, 2007**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

TERRY L. RICHARDS,

    Defendant-Appellant.

No. 06-3286
(D. Kan.)
(D.Ct. No. 05-CR-40148-SAC)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TACHA**, Chief Circuit Judge, and **BARRETT** and **BRORBY**, Senior Circuit Judges.

_____

    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is therefore ordered submitted without oral argument.

    Appellant Terry L. Richards appeals his conviction for one count of

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Mr. Richards appeals his conviction on grounds the district court erred in denying his motion to suppress evidence obtained following a pat-down search of his person in violation of his Fourth Amendment rights. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm Mr. Richards's conviction.

## I. Factual and Procedural Background

The following undisputed facts stem from evidence presented at the suppression hearing and relied on by the district court in denying Mr. Richards's motion to suppress. At 12:45 a.m. on August 29, 2005, Police Officer Bobby Ming was on patrol in Topeka, Kansas, when he received a police dispatch notifying him of an armed robbery of a cab driver on the north side of town. The dispatch identified the suspects as three black males who robbed the cab driver with a nine millimeter handgun in the area of a convenience store near Seventeenth Street and Topeka Boulevard. It also reported the cab driver had originally picked the suspects up three miles away at the 2400 block of Madison Street, which is near the southeast area of Topeka where Officer Ming was located; after the robbery, the suspects were reported to have fled in a dark-colored Cadillac. At the dispatcher's request, Officer Ming drove to the 2400 block of Madison, where the cab ride originated, in the event the suspects returned to that area, but he did not see a car fitting the description.

Officer Ming then drove to the Boys' and Girls' Club a few blocks away and parked his vehicle so he could observe the 2600 block of Adams Street. At approximately 1:05 a.m., he heard a loud noise from the exhaust of a vehicle accelerating uphill and traveling from the direction of town where the robbery occurred; the vehicle was an older, dark grey-blue Cadillac heading southbound at a high rate of speed.[1] No other vehicles were operating in the area, which Officer Ming noted was the typical traffic situation at 1:05 on a Sunday morning. At that time, Officer Ming could not see how many people were in the vehicle or their race or sex.

Officer Ming followed the vehicle, which he observed failing to stay in its lane and weaving between lanes without signaling, presumably due to the driver spotting the officer in his rearview mirror. Before stopping the vehicle, Officer Ming called for a back-up unit because he feared for his and others' safety, given the Cadillac might contain the nine millimeter gun used to rob the cab driver. In attempting to stop the vehicle Officer Ming turned on his emergency lights, but the Cadillac did not immediately stop and instead pulled over as if to yield, then traveled thirty-five to forty yards against the curb, creeping along at an idling speed. Based on his many years of law enforcement experience, this action

[1] Officer Ming is a certified radar operator, required to estimate vehicle speeds correctly within a range of five miles per hour.

caused Officer Ming to believe the occupants were drinking, hiding evidence of illegal conduct, accessing weapons, or preparing to flee; consequently, his belief the traffic stop would be dangerous was heightened.

Once the Cadillac stopped, Officer Ming waited for a back-up officer to arrive. After the officer arrived, Officer Ming approached the vehicle with his flashlight on and his handgun out with its safety off. Although it was dark, Officer Ming ascertained the vehicle contained four or five black males, heightening his suspicion it might be the same vehicle involved in the robbery. In approaching the vehicle, Officer Ming proceeded along the trunk to the vehicle's rear window pillar so if anyone possessed a gun they would have to turn around and make a noticeable motion before they fired at him. While standing behind the window pillar, Officer Ming identified himself, explained the reason for the stop, requested paperwork, and asked the driver to step out of the vehicle and back to Officer Ming's location. Officer Ming then explained to the driver that the reason for the stop stemmed from his speeding and a recent robbery, and, with his consent, Officer Ming did a pat-down search of the driver and then directed him to sit on the curb, with which he complied.

Officer Ming then went to the passenger side of the Cadillac and asked Mr. Richards, the front seat passenger, to step out of the vehicle and join him at the

rear of the vehicle so he could speak with him. While Mr. Richards ultimately complied, Officer Ming noticed he was hesitant about getting out and reluctant to comply with his requests; Mr. Richards also began questioning the officer about the purpose of the stop. Concerned for his safety because Mr. Richards was a large man, and hoping to defuse any tension, Officer Ming calmly asked him to place his hands on the trunk; Mr. Richards hesitated and then complied. In patting him down, Officer Ming first put one hand on Mr. Richards's back and felt him tense; just as Officer Ming began to sweep the front of his waistband, Mr. Richards spun around, at which time Officer Ming distinctly felt a gun protruding through his t-shirt. Mr. Richards then ran, fleeing to a nearby wooded area with Officer Ming giving chase, shouting for him to stop, and radioing for additional backup. After other officers arrived, Mr. Richards was arrested. When another officer patted down Mr. Richards, he found a handgun magazine containing .25 caliber rounds in his front pants pocket. About six to ten feet from where Mr. Richards was patted down, the officers also found a handgun, drugs and a six-pointed star ring.[2]

Following his arrest, Mr. Richards's counsel filed a motion to suppress evidence obtained from the pat-down search, contending the search was

---

[2] According to Officer Ming, the six-pointed star ring is "an indicator of the Folks Gang. It's a recognition sign." R., Vol. 3 at 39.

unconstitutional. Following a suppression hearing where Officer Ming testified, the district court issued a well-reasoned, comprehensive decision, determining Officer Ming possessed an articulable, reasonable suspicion to: (1) stop the Cadillac based on the speeding and lane violations; and (2) perform the pat-down search. With respect to the latter, the district court applied the relevant law to the facts presented and determined Officer Ming possessed an articulable, reasonable suspicion for the pat-down search based on the "totality of the circumstances," including, in part, the fact: (1) the vehicle matched the description of the dark-colored Cadillac involved in the armed robbery; (2) the race, number, and sex of its occupants matched the description of the armed robbery suspects; (3) the location of the speeding vehicle was near where the taxi ride originated and was traveling away from the area where the robbery occurred; (4) it was the early hours of the morning and there was a lack of other traffic at that time; (5) the car was operated in a fast or unusual manner before and during Officer Ming's attempt to stop it; (6) Mr. Richards displayed hesitant and argumentative conduct when asked to cooperate and place his hands on the trunk; and (7) Officer Ming believed the defendant, as an occupant of the stopped vehicle, might be armed and dangerous and a *Terry* frisk would be necessary to protect himself and others.

Following the district court's denial of his motion to suppress, Mr. Richards entered a conditional guilty plea to possession of a firearm by a

convicted felon, reserving the right to appeal the suppression issue raised. Following the sentencing hearing, the district court sentenced Mr. Richards to fifty-one months imprisonment. Mr. Richards now appeals his conviction.

## II. Discussion

On appeal, Mr. Richards contends the pat-down search by Officer Ming was "constitutionally unreasonable, because the facts available to law enforcement did not warrant a reasonable belief ... [he] was armed and dangerous." Mr. Richards premises his contention on the fact the police dispatch only provided "thumbnail bits of information" that an armed robbery occurred involving a dark-colored Cadillac containing three suspects, which he argues was insufficient, under our decision in *United States v. Jones*, 998 F.2d 883 (10th Cir. 1993), to support a pat-down search. In support of his argument, Mr. Richards contends: (1) dark-colored Cadillacs are not unusual in Topeka and the generic description of a dark Cadillac was too broad to generate reasonable suspicion for the stop; (2) Officer Ming stopped a Cadillac containing five individuals and not three individuals as reported by the dispatch; (3) other than information the three suspects were black males, no information was known about the "height, weight, hair style, clothing, or any other distinguishing characteristic[s] of the robbery suspects"; (4) the elapsed twenty- to thirty-minute time period between the dispatch and the stop meant the suspect vehicle could be anywhere in Topeka; (5)

it should have taken only three to five minutes, rather than twenty to thirty

minutes, to drive three miles from the robbery location to the stop location; and

(6) neither the driver nor Mr. Richards said or did anything threatening to the

officers prior to the pat-down search.  He also argues the fact the car drove slowly

for forty yards after Officer Ming activated his emergency lights was insufficient

to warrant a reasonable belief Mr. Richards was armed and dangerous, and Mr.

Richards's hesitancy to comply with Officer Ming's commands was momentary

and otherwise did not justify a pat-down search.  For these reasons, Mr. Richards

suggests the pat-down search was unconstitutional, and therefore, evidence

resulting from the search should have been suppressed.

     We begin addressing Mr. Richards's argument with our standard of review:

> When reviewing the denial of a motion to suppress, we accept the
> district court's factual findings unless clearly erroneous, and we
> review the evidence in the light most favorable to the government.
> However, we review de novo the ultimate determination of
> reasonableness under the Fourth Amendment because that is a legal
> conclusion.  The defendant bears the burden of establishing a Fourth
> Amendment violation.

*United States v. Patterson*, 472 F.3d 767, 775 (10th Cir. 2006) (quotation marks

and citations omitted).

     As to the applicable legal analysis, for the purpose of judicial economy we

decline to repeat the district court's exhaustive discussion of the law applicable to

-8-

pat-down searches, other than to repeat a few relevant principles specifically applicable to the circumstances presented here. In situations involving a traffic stop, we have held an officer may take steps to reasonably protect himself and others, provided those measures are not too intrusive and the government's strong interest in officer safety outweighs the motorist's interests. *See United States v. Dennison*, 410 F.3d 1203, 1211 (10th Cir.), *cert. denied*, 126 S. Ct. 468 (2005). When an officer possesses a reasonable suspicion to believe an occupant of a vehicle may be armed and dangerous, that officer may conduct a reasonable pat-down search of the driver and any passengers of the vehicle for weapons in order to protect himself and others. *See Dennison*, 410 F.3d at 1211; *United States v. Manjarrez*, 348 F.3d 881, 886-87 (10th Cir. 2003). Thus, in determining if a pat-down search is constitutionally valid, we look to the totality of the circumstances, including the articulable facts presented, taken together with the rational inferences from those facts, to determine if they would cause a reasonably prudent officer to believe his safety and the safety of others was in danger. *See Dennison*, 410 F.3d at 1210-11; *Manjarrez*, 348 F.3d at 887. In so doing, we give "deference to the officer's ability to draw on his own experience and specialized training to make inferences from and deductions about the cumulative information available to him that might well elude an untrained person." *United States v. Johnson*, 364 F.3d 1185, 1193 (10th Cir. 2004) (quotation marks and citations omitted).

In applying these principles to the facts at hand, it is clear Mr. Richards has not carried his burden of establishing a Fourth Amendment violation. As the district court explained, Officer Ming possessed a reasonable, articulable suspicion to conduct the pat-down search based on his own law enforcement experience and the totality of the circumstances, including but not limited to the fact the speeding vehicle and its occupants appeared to match the description of both the vehicle and suspects involved in the armed robbery, and therefore, it was not unreasonable to believe the occupants of the vehicle may have possessed the gun used in the armed robbery. Without conducting a pat-down search, Officer Ming could not assure the safety of himself or others during the traffic stop, and such a search was not so intrusive as to cause Mr. Richards's Fourth Amendment interests to outweigh the officer's interests in safety.

The fact the stop came twenty or thirty minutes after the robbery, in an area only a few miles away from the convenience store, does not diminish Officer Ming's reasonable suspicion the vehicle and its occupants may have been involved in the robbery. Not only did the Cadillac match the general description of the robbery vehicle used, but it was the only vehicle operating in the area that morning, and the possibility existed the robbery suspects spent time taking measures to evade authorities before returning to the area where their conduct originated. Similarly, while more than three men occupied the vehicle, it was not

unreasonable for Officer Ming to continue to assume it contained the robbery suspects, given one or more individuals may have been in the getaway vehicle waiting to pick up the others. While Mr. Richards points to these and other facts to suggest innocent conduct occurred which did not necessitate a pat-down search, we do not look at each factor in isolation but at the "totality of the circumstances" to determine if the officer had a "particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quotation marks and citation omitted). Similarly, an officer's "determination that reasonable suspicion exists ... need not rule out the possibility of innocent conduct." *Id.* at 277.

Next, as the district court explained, the situation presented here is different from *Jones,* where authorities, looking for two armed black males in a black Mercedes, impermissibly singled out two black males in a black Mercedes in a city as large as Albuquerque at 4:00 p.m. on a weekday afternoon, where the vehicle: (1) also contained a woman and at least one child; (2) was not traveling in a direction away from the disturbance; (3) parked at a grocery store rather than fleeing authorities; and (4) did not appear or operate in a way to arouse the officers' suspicions. 998 F.2d at 884-85.

In contrast, the situation here involved not only a dark-colored Cadillac and

-11-

at least three black males matching the general description provided, but the Cadillac was the only vehicle in the vicinity in the early hours of the morning, and also sped and wove between lanes in a direction away from the robbery. We have held suspects fleeing from an armed robbery present an exigency calling for action, *see United States v. Miller*, 532 F.2d 1335, 1338 (10th Cir. 1976), and the matching general description of the robbery vehicle and suspects, together with the time of day, lack of other traffic, and direction, location, and erratic operation of the Cadillac provided Officer Ming with sufficient articulable, reasonable suspicion to conduct a pat-down search in order to assure his and others' safety during the traffic stop. Moreover, unlike the situation in *Jones*, Mr. Richards's demeanor and hesitant cooperation, together with other examples of the Cadillac's erratic operation, including its failure to stop and its operation next to the curb at idling speed for almost forty yards, contributed to the totality of the circumstances and Officer Ming's articulable, reasonable suspicion the occupants might be accessing a weapon.

## III. Conclusion

For these and the other reasons outlined by the district court, Mr. Richards has failed to carry his burden of showing the district court erred in denying his motion to suppress evidence of the gun found during a pat-down search.

Accordingly, we **AFFIRM** Mr. Richards's conviction.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge