******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.*
QUENTINE L. DAVIS
(SC 20157)

Robinson, C. J., and Palmer, McDonald, D'Auria, Mullins and Ecker, Js.*

*Syllabus*

Convicted, on a conditional plea of nolo contendere, of the crimes of criminal
possession of a pistol and carrying a pistol without a permit, the defen-
dant appealed, claiming, inter alia, that the trial court improperly denied
his motion to suppress the handgun that had given rise to those charges.
On the evening of the defendant's arrest, an anonymous tipster had
called 911 to report that a group of men was gathered near a vehicle
parked outside of his window and that "a young man" in that group
was in possession of a handgun. The caller could not say exactly how
many men there were because they were moving back and forth across
the street. The caller further stated that, although he had seen the
handgun, he could not identify the specific person who was carrying it
because all of the men were wearing dark clothing. When police officers
responded to that location, a group of approximately six men who were
standing around the vehicle began to walk away. The police officers
then ordered the men to stop in order to conduct a search pursuant to
*Terry* v. *Ohio* (392 U.S. 1), but the defendant continued to walk away.
The officers repeated their order, after which they witnessed the defen-
dant drop an object into a nearby garbage can. The police ultimately
arrested the defendant, searched the garbage can, and discovered the
handgun. On the basis of these facts, the defendant filed a motion to
suppress the handgun, claiming, inter alia, that the *Terry* stop was
unlawful and that the subsequent discovery of the handgun was tainted
by the unlawful *Terry* stop. Specifically, the defendant claimed that the
anonymous tip did not give rise to a reasonable suspicion that he had
been engaged in criminal activity and that his detention therefore vio-
lated his right to be free from unreasonable seizures under the fourth
amendment to the United States constitution. The trial court denied the
motion to suppress, and the defendant appealed. *Held* that the trial
court improperly denied the defendant's motion to suppress, this court
having concluded that the detention of the defendant violated the fourth
amendment because the anonymous tip that the police received did not
give rise to a reasonable suspicion that the defendant had been engaged
in criminal activity: although the information conveyed in the anonymous
tip may have supported a reasonable suspicion that a young man pos-
sessed a handgun in the location where the group of men were spotted
under the standard set forth in *Navarette* v. *California* (572 U.S. 393),
that information was not sufficiently detailed or specific to enable the
police to know which of the approximately six individuals subject to
the *Terry* stop possessed the handgun and, therefore, did not give rise
to a reasonable suspicion that the defendant himself was in possession
of the handgun.

Argued November 16, 2018—officially released April 2, 2019

*Procedural History*

Information charging the defendant with the crimes
of criminal possession of a pistol, carrying a pistol with-
out a permit, possession of less than one-half ounce of
cannabis-type substance, breach of peace in the second
degree and interfering with an officer, brought to the
Superior Court in the judicial district of New Haven,
geographical area number twenty-three, where the
court, *B. Fischer, J.*, denied the defendant's motion
to suppress certain evidence; thereafter, the defendant
was presented to the court, *Cradle, J.*, on a conditional

plea of nolo contendere to the charges of criminal possession of a pistol and carrying a pistol without a permit; judgment of guilty in accordance with the plea, from which the defendant appealed. *Reversed*; *further proceedings*.

*Daniel M. Erwin*, for the appellant (defendant).

*Jennifer F. Miller*, assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Devant Joiner*, assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, C. J. The sole issue in this appeal is whether, under *Navarette* v. *California*, 572 U.S. 393, 134 S. Ct. 1683, 188 L. Ed. 2d 680 (2014), the trial court properly denied a motion to suppress evidence discovered by the police during the forcible detention of the defendant, Quentine L. Davis, pursuant to *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), on the basis of an anonymous telephone tip regarding "a young man that has a handgun." After the police detained the defendant, they saw him drop an object in a garbage can, a subsequent search of which revealed a handgun. The defendant was arrested and charged with, inter alia, criminal possession of a pistol in violation of General Statutes § 53a-217c and carrying a pistol without a permit in violation of General Statutes § 29-35 (a).[1] The defendant moved to suppress the handgun, claiming that the evidence resulting from the search of the garbage can was tainted as the result of his unlawful seizure. Specifically, the defendant claimed that the anonymous tip did not give rise to a reasonable suspicion that he was engaged in, or was about to be engaged in, criminal activity, and, therefore, that his detention violated his right to be free from unreasonable seizures under the fourth amendment to the United States constitution[2] and article first, §§ 7 and 9, of the Connecticut constitution. The trial court denied the motion to suppress. Thereafter, the defendant entered a conditional plea of nolo contendere to the gun charges pursuant to General Statutes § 54-94a. See also footnote 4 of this opinion. The trial court accepted that plea and rendered a judgment of conviction. This appeal followed.[3] We agree with the defendant's claim that his detention violated his fourth amendment rights under *Navarette*. Accordingly, we conclude that the trial court improperly denied the motion to suppress and reverse the judgment of the trial court.

The record reveals the following facts that were found by the trial court or are undisputed, and procedural history. At approximately 7:26 p.m. on the evening of September 28, 2016, the New Haven Police Department received an anonymous 911 telephone call regarding "a young man that has a handgun." The caller reported that he could see "a whole bunch" of men between 472 and 476 Winthrop Avenue in New Haven, some of whom were gathered around a black Infiniti. The caller could not "say exactly how many" men there were because they were crossing back and forth across the street. The caller stated that he could see the handgun from his window but that he could not identify the specific person who was carrying it because all of the men were wearing dark clothing. When asked, the caller denied that the men were fighting or arguing. When the dispatcher inquired, the caller declined to give his name or telephone number.

The dispatcher relayed the anonymous tip to police officers on the beat. Within minutes, three police cruisers containing at least five uniformed police officers arrived at the scene. At least one of the cruisers was sounding its siren. As the police officers exited the cruisers, a number of them unholstered their guns. The officers considered this location to be in a high crime area.

The officers observed approximately six men standing around a black Infiniti. As the police approached the men, they walked away. Officer Thomas Glynn ordered them to stop, and five of them did. Glynn and another officer, Matthew Collier, recognized two of the men from previous criminal interactions. The sixth individual, later identified as the defendant, continued to walk away from the police down Winthrop Avenue, despite additional orders to stop by Collier and Glynn. The defendant held his right hand at his waist in front of his body, extended his arm, and dropped an object into a garbage can. Shortly after dropping the object, the defendant turned toward Collier and Glynn and said something to the effect of "who, me?" At that point, the police arrested the defendant. A subsequent search of the garbage can produced a 9 millimeter handgun.

The defendant was charged with criminal possession of a pistol in violation of § 53a-217c and carrying a pistol without a permit in violation of § 29-35 (a).[4] Thereafter, he filed a motion to suppress the handgun, claiming that his detention violated the fourth amendment of the United States constitution and article first, §§ 7 and 9, of the Connecticut constitution, and that the search of the garbage can was tainted by his unconstitutional seizure. Specifically, the defendant contended that the anonymous telephone tip was not sufficiently reliable to give rise to a reasonable suspicion that he was engaged in criminal activity. After conducting an evidentiary hearing, the trial court determined that the police effectuated an investigative stop of the defendant when Glynn initially ordered the six men to stop.[5] The trial court further concluded that, under the United States Supreme Court's decision in *Navarette* v. *California*, supra, 572 U.S. 393, the anonymous telephone tip was sufficiently reliable to give rise to a reasonable suspicion that the defendant was engaged in criminal activity because (1) the caller was relaying his firsthand, eyewitness observations, (2) the caller's observations were contemporaneous with the call, (3) the caller was using the 911 system, and (4) the caller was reporting what would have been a "startling event" for a person in his position. In addition, the trial court found it "significant" that the police officers knew that this location was in a high crime area and that the six individuals who were gathered around the black Infiniti immediately began to disperse upon seeing the police. The trial court also noted, without further comment, that the

police recognized two of the individuals from prior criminal encounters. Accordingly, the trial court denied the defendant's motion to suppress.

Thereafter, the defendant filed a "motion to reconsider and/or articulate" in which he contended that the trial court's reliance on *Navarette* was misplaced because the state had not cited that case. The defendant further argued that, because *Navarette* was based on specific concerns arising in the context of anonymous tips about drunk driving, it should be limited to that context. The defendant also requested that the trial court clarify whether it had rejected his claim under the state constitution. The trial court summarily denied this motion.

Thereafter, the defendant entered a conditional plea of nolo contendere to the gun charges pursuant to § 54-94a. The trial court accepted the plea and imposed an effective sentence of ten years imprisonment, execution suspended after five years, followed by five years of probation. This appeal followed. See footnote 3 of this opinion.

On appeal, the defendant contends that the trial court improperly determined that the anonymous 911 call was sufficiently reliable under the United States constitution to give rise to a reasonable suspicion that he was engaged in, or about to engage in, criminal activity, thereby warranting a *Terry* stop. Specifically, he again contends that *Navarette* v. *California*, supra, 572 U.S. 393, should be limited to cases involving anonymous tips about drunk driving. The defendant further contends that, even if *Navarette* extends beyond drunk driving, the anonymous tip in the present case was insufficient to give rise to a reasonable suspicion that the defendant was engaged in criminal activity because the anonymous caller "identified only a group of young men as opposed to an individual," and he "did not report an ongoing crime [but] specifically repudiated the threat of violence."

Assuming, without deciding, that *Navarette* is not limited to anonymous tips about drunk driving, we conclude that, although the anonymous tip in the present case was sufficiently reliable under the *Navarette* standard to give rise to a reasonable suspicion that a young man in the vicinity of 472-476 Winthrop Avenue had a handgun, it was *not* sufficiently detailed to give rise to a reasonable suspicion that the *defendant* was in possession of that gun.[6] Accordingly, we conclude that the forcible detention of the defendant violated the fourth amendment to the United States constitution.[7]

We begin our analysis with the standard of review. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence

and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . We undertake a more probing factual review when a constitutional question hangs in the balance." (Citation omitted; internal quotation marks omitted.) *State* v. *Burroughs*, 288 Conn. 836, 843, 955 A.2d 43 (2008). Because the defendant in the present case does not challenge the trial court's factual findings but claims only that those findings do not support the conclusion that the police had a reasonable and articulable suspicion that he was engaged in criminal activity, our review is de novo. See, e.g., *State* v. *Benton*, 304 Conn. 838, 842–43, 43 A.3d 619 (2012). The state has the "burden of proving that the police had a reasonable and articulable suspicion to justify an investigatory detention." *State* v. *Batts*, 281 Conn. 682, 694, 916 A.2d 788, cert. denied, 552 U.S. 1047, 128 S. Ct. 667, 169 L. Ed. 2d 524 (2007).

We next review the governing legal principles. "Under the fourth amendment to the United States constitution, and under article first, [§§ 7 and 9, of the] Connecticut constitution, a police officer may briefly detain an individual for investigative purposes if the officer has a reasonable and articulable suspicion that the individual has committed or is about to commit a crime." (Internal quotation marks omitted.) *State* v. *Clark*, 255 Conn. 268, 281, 764 A.2d 1251 (2001); see also *Terry* v. *Ohio*, supra, 392 U.S. 30–31 (police officer may detain suspect and engage in stop and frisk investigation if officer has reasonable and articulable suspicion that suspect is armed and dangerous). "When considering the validity of a [*Terry*] stop, our threshold inquiry is twofold. . . . First, we must determine at what point, if any . . . the encounter between [the police officers] and the defendant constitute[d] an investigatory stop or seizure. . . . Next, [i]f we conclude that there was such a seizure, we must then determine whether [the police officers] possessed a reasonable and articulable suspicion [that the individual is engaged in criminal activity] at the time the seizure occurred. . . . In assessing whether the police officers possessed the requisite reasonable and articulable suspicion, we must consider whether, relying on the whole picture, the detaining officers had a particularized and objective basis for suspecting the particular person stopped of criminal activity. When reviewing the legality of a stop, a court must examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom." (Citation omitted; internal quotation marks omitted.) *State* v. *Benton*, supra, 304 Conn. 843–44.

"Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person,

having the information available to and known by the police would have had that level of suspicion. . . . The police officer's decision . . . must be based on more than a hunch or speculation. . . . In justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Internal quotation marks omitted.) *State* v. *Hammond*, 257 Conn. 610, 617, 778 A.2d 108 (2001).

"An anonymous tip generally does not satisfy the requirement of reasonable suspicion . . . ." *State* v. *Mann*, 271 Conn. 300, 326 n.21, 857 A.2d 329 (2004), cert. denied, 544 U.S. 949, 125 S. Ct. 1711, 161 L. Ed. 2d 527 (2005). This is because, "[u]nlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, see *Adams* v. *Williams*, 407 U.S. 143, [146–47, 92 S. Ct. 1921, 32 L. Ed. 2d 612] (1972), an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity, *Alabama* v. *White*, [496 U.S. 325, 329, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990)]. As we have recognized, however, there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." (Internal quotation marks omitted.) *State* v. *Hammond*, supra, 257 Conn. 617; see also *Navarette* v. *California*, supra, 572 U.S. 397 ("[O]rdinary citizens generally do not provide extensive recitations of the basis of their everyday observations, and an anonymous tipster's veracity is by hypothesis largely unknown, and unknowable. . . . But under appropriate circumstances, an anonymous tip can demonstrate sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop." [Citation omitted; internal quotation marks omitted.]).

"Whether an anonymous tip suffices to give rise to reasonable suspicion depends on both the quantity of information it conveys as well as the quality, or degree of reliability, of that information, viewed under the totality of the circumstances." *United States* v. *Wheat*, 278 F.3d 722, 726 (8th Cir. 2001), cert. denied, 537 U.S. 850, 123 S. Ct. 194, 154 L. Ed. 2d 81 (2002). "[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Alabama* v. *White*, supra, 496 U.S. 330.

In *Navarette* v. *California*, supra, 572 U.S. 397, a majority of the United States Supreme Court found its decisions in *Alabama* v. *White*, supra, 496 U.S. 325, and *Florida* v. *J. L.*, 529 U.S. 266, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000), to be "useful guides" in determining whether an anonymous tip had sufficient indicia of reliability to give rise to a reasonable suspicion. See also

*State* v. *Hammond*, supra, 257 Conn. 617–20 (United States Supreme Court's decisions in *White* and *J. L.* "dominate this analysis"). "In *White*, an anonymous tipster told the police that a woman would drive from a particular apartment building to a particular motel in a brown Plymouth station wagon with a broken right tail light. The tipster further asserted that the woman would be transporting cocaine. . . . After confirming the innocent details, officers stopped the station wagon as it neared the motel and found cocaine in the vehicle. . . . [The United States Supreme Court] held that the officers' corroboration of certain details made the anonymous tip sufficiently reliable to create reasonable suspicion of criminal activity. By accurately predicting future behavior, the tipster demonstrated a special familiarity with [the suspect's] affairs, which in turn implied that the tipster had access to reliable information about that individual's illegal activities. . . . [The court] also recognized that an informant who is proved to tell the truth about some things is more likely to tell the truth about other things, including the claim that the object of the tip is engaged in criminal activity. . . .

"In *J. L.*, by contrast, [the court] determined that no reasonable suspicion arose from a barebones tip that a young black male in a plaid shirt standing at a bus stop was carrying a gun. . . . The tipster did not explain how he knew about the gun, nor did he suggest that he had any special familiarity with the young man's affairs. . . . As a result, police had no basis for believing that the tipster [had] knowledge of concealed criminal activity. . . . Furthermore, the tip included no predictions of future behavior that could be corroborated to assess the tipster's credibility. . . . [The court] accordingly concluded that the tip was insufficiently reliable to justify a stop and frisk." (Citations omitted; internal quotation marks omitted.) *Navarette* v. *California*, supra, 572 U.S. 397–98.

On the basis of its decisions in *Alabama* v. *White*, supra, 496 U.S. 325, and *Florida* v. *J. L.*, supra, 529 U.S. 266, the majority in *Navarette* identified the following four factors to be considered in determining whether an anonymous tip has sufficient indicia of reliability: (1) whether the tipster had firsthand knowledge of the alleged criminal behavior; (2) whether the report was contemporaneous with the alleged criminal behavior; (3) whether the report was made "under the stress of excitement caused by a startling event"; and (4) whether the tipster used the 911 emergency system, which allows calls to be recorded, thereby providing "victims with an opportunity to identify the false tipster's voice and subject him to prosecution . . . ." *Navarette* v. *California*, supra, 572 U.S. 399–400. Once a court has determined that an anonymous tip is reliable on the basis of these factors, that court must then determine whether the tip "creates reasonable suspicion that criminal activity may be afoot." (Internal quotation

marks omitted.) Id., 401; see also id. (upon determining that anonymous 911 call was reliable, court was required to "determine whether the 911 caller's report of being run off the roadway created reasonable suspicion of an ongoing crime such as drunk driving as opposed to an isolated episode of past recklessness").

In *Navarette*, the anonymous 911 call was recorded as follows: "Showing southbound Highway 1 at mile marker 88, Silver Ford 150 pickup. Plate of 8-David-94925. Ran the reporting party off the roadway and was last seen approximately five [minutes] ago." (Internal quotation marks omitted.) Id., 395. Applying the four reliability factors that it had identified, the court noted that (1) the tipster had firsthand knowledge of the defendant's conduct, (2) the tip was contemporaneous with the conduct and contained innocent details later corroborated by police observations, (3) the observed conduct was startling, and (4) the tipster used the 911 system. Id., 399–401. The court ultimately concluded that, although it was a close case, the police reasonably could rely on the veracity of the tipster's report. Id., 404. The court further concluded that the observed conduct gave rise to a reasonable suspicion of drunk driving. Id. Accordingly, it concluded that the *Terry* stop of the defendant was lawful.[8] Id.

Like the anonymous tipster in *Navarette*, the anonymous caller in the present case used the 911 system, and provided a contemporaneous, firsthand account of the alleged criminal conduct[9] containing innocent details later corroborated by the police. Likewise, the caller reasonably might have been startled by seeing a handgun. We therefore assume for purposes of this opinion that, *as far as it went*, the police reasonably could have relied on the caller's statement.[10] In other words, we assume that, under *Navarette*, the police reasonably could have believed the anonymous caller's statement that he saw a young man with a handgun in the vicinity of 472 to 476 Winthrop Avenue shortly before they arrived at the scene. We conclude for the following reasons, however, that, even if the tip was trustworthy, it did not give rise to a reasonable suspicion that the *defendant* was in possession of that gun.

Unlike the tipster in *Navarette*, who provided a detailed description of the specific vehicle that had run her off the road, thereby enabling the police to identify that particular vehicle, the anonymous caller in the present case did not provide a sufficiently detailed, specific description of the "young man" who had the handgun to allow the police to identify that particular individual. Numerous courts have recognized that the lack of a detailed, specific description sufficient to enable the police to identify the particular individual or vehicle that is alleged to have been involved in criminal conduct fatally undermines the sufficiency of an anonymous tip. In *United States* v. *Wheat*, supra, 278 F.3d 731, for

example, the United States Court of Appeals for the Eighth Circuit stated that "the anonymous tipster must provide a sufficient quantity of information, such as the make and model of the vehicle, its license plate numbers, its location and bearing, and similar innocent details, so that the officer, and the court, may be certain that the vehicle stopped is the same as the one identified by the caller." In *Wheat*, the court further observed that, although *Florida* v. *J. L.*, supra, 529 U.S. 266, "focused on deficiencies in the quality, rather than in the quantity, of the information contained in the tip at issue in that case . . . it [was] significant that that tip only spoke of a young black male wearing a plaid shirt, standing at a particular bus stop. See [*Florida* v. *J. L.*, supra, 268]. That is a rather generic description [creating] the possibility for confusion of the suspect's identity . . . ." *United States* v. *Wheat*, supra, 731.

Similarly, the District of Columbia Court of Appeals has observed that, "[i]n order to pass muster under *Terry* and its progeny, the articulable suspicion must be particularized as to the individual stopped. . . . Accordingly, in the absence of other circumstances that provide sufficient particularity, a description applicable to large numbers of people will not suffice to justify the seizure of an individual." (Citations omitted; internal quotation marks omitted.) *In re S.B.*, 44 A.3d 948, 954–55 (D.C. 2012). In that case, the court concluded that an anonymous tip that a black male who was wearing white pants and "messing around" with a girl in a particular playground had a gun was insufficient to establish reasonable suspicion as to the defendant in that case because the police officers lacked "a rational basis for differentiating [the defendant] from [a different] individual in white clothing whom they had just searched (or any other juvenile in white pants who might come along) . . . ." Id., 956–57; see also *Goodson* v. *Corpus Christi*, 202 F.3d 730, 737 (5th Cir. 2000) (lookout broadcast for "tall, heavy-set, white man dressed as a cowboy" did not give police "reasonable suspicion to stop and frisk any tall, heavy-set, white man" because "[s]uch a description would simply be too vague, and fit too many people, to constitute particular, articulable facts on which to base reasonable suspicion"); *United States* v. *Jones*, 998 F.2d 883, 884–85 (10th Cir. 1993) (tip from identified callers regarding suspicious activity by two African-American men who left scene in black Mercedes was not sufficiently specific to give rise to reasonable suspicion to stop black Mercedes in which two African-American men were traveling); *United States* v. *Jones*, 619 F.2d 494, 497 (5th Cir. 1980) (radio bulletin indicating that "the police were looking for a black male, [five] feet [six] inches to [five] feet [nine] inches tall and weighing between 150 and 180 pounds, with a medium afro hair style, who was wearing jeans and a long denim jacket" did not give rise to probable cause to arrest individual merely

because he matched that description); *In re A.S.*, 614 A.2d 534, 539 (D.C. 1992) (lookout broadcast was not sufficient to establish reasonable suspicion when police officer's description "could have fit not merely the five individuals [in the specified location], but a potentially much greater number of youths in the area"); *State* v. *Golotta*, 178 N.J. 205, 222, 837 A.2d 359 (2003) (911 caller "must provide a sufficient quantity of information, such as an adequate description of the vehicle, its location and bearing, or similar innocent details, so that the officer, and the court, may be certain that the vehicle stopped is the same as the one identified by the caller" [internal quotation marks omitted]); see also *State* v. *Benton*, supra, 304 Conn. 843 (police must have "a particularized and objective basis for suspecting the particular person stopped of criminal activity" [internal quotation marks omitted]).[11] Indeed, we entirely agree with the District of Columbia Court of Appeals that the "dragnet seizure of [multiple] youths who resembled a generalized description cannot be squared with the long-standing requirement for particularized, individualized suspicion." *In re A.S.*, supra, 540; see also id. ("[t]o allow the seizure of three people on the basis of a generalized description that would fit many people is directly contrary to the central teaching of the [Supreme] Court's [f]ourth [a]mendment jurisprudence demanding specificity" [internal quotation marks omitted]).

In the present case, the anonymous caller indicated only that the handgun was in possession of one of several young men wearing dark clothing in the vicinity of 472 to 476 Winthrop Avenue. It is clear, therefore, that the tip was not sufficiently detailed or specific to enable the police to know which of the six individuals subjected to the *Terry* stop had the handgun. Indeed, they had no way of knowing whether *any* of those individuals had that gun. The caller could not specify exactly how many individuals he had seen, and he indicated that some of the individuals were gathered around the Infiniti, while others were "crossing the street . . . back and forth." Thus, for all the police knew, it was possible that the individual with the handgun was not part of the group gathered around the Infiniti. Accordingly, we conclude that the tip was not sufficiently specific to give rise to the particularized, individualized suspicion required by the fourth amendment. The fact that the tip involved the possession of a firearm does not affect this conclusion. See *Florida* v. *J. L.*, supra, 529 U.S. 272 ("an automatic firearm exception to our established reliability analysis would rove too far").[12]

We therefore conclude that the anonymous 911 call in the present case did not give rise to a reasonable suspicion that any of the individuals gathered in the vicinity of the black Infiniti, including the defendant, was in possession of a handgun, justifying an investigative *Terry* stop. We, therefore, further conclude that the

seizure of the defendant violated his fourth amendment rights. Accordingly, we also conclude that the trial court improperly denied the defendant's motion to suppress.

In reaching these conclusions, we are mindful of the gun violence that plagues our state and our nation and the importance of ensuring that the police have the tools that they need to combat this pestilence. We emphasize that the police have not only the right, but the duty to respond appropriately and effectively to gun complaints. For example, as the defendant conceded at oral argument before this court, the police in the present case could have responded to the anonymous 911 call by going to the scene and observing the men or approaching them to ask about the handgun without effecting a *Terry* stop. See *United States* v. *Watson*, 900 F.3d 892, 898 (7th Cir. 2018) (when police receive anonymous tip about gun, they can respond "with a strong and visible police presence, one that involved talking with people on the scene when they arrived" or "make their own observations about the developing situation, which could transform an innocuous tip into reasonable suspicion" [internal quotation marks omitted]); *United States* v. *Lowe*, 791 F.3d 424, 436 (3d Cir. 2015) ("[o]fficers proceeding on the basis of an anonymous tip that does not itself give rise to reasonable suspicion have many tools at their disposal to gather additional evidence that could satisfy the requirements of *Terry* and therefore allow police to stop the individual . . . [including] investigation, surveillance, and even approaching the suspect without a show of authority to pose questions and to make observations about the suspect's conduct and demeanor" [citation omitted]); see also *United States* v. *Harger*, 313 F. Supp. 3d 1082, 1092 (N.D. Cal. 2018).

The judgment is reversed and the case is remanded with direction to grant the defendant's motion to suppress.

In this opinion the other justices concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Robinson and Justices Palmer, McDonald, D'Auria, Mullins and Ecker. Although Chief Justice Robinson was not present when the case was argued before the court, he has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

[1] We note that, although these statutes have been amended since the events underlying the present appeal; see, e.g., Public Acts 2016, No. 16-34, § 16; those amendments have no bearing on the merits of this appeal. For the sake of simplicity, we refer to the current revision of these statutes.

[2] "The fourth amendment's protection against unreasonable searches and seizures is made applicable to the states through the due process clause of the fourteenth amendment to the United States constitution." *State* v. *Kelly*, 313 Conn. 1, 8 n.3, 95 A.3d 1081 (2014).

[3] The defendant appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] The defendant was also charged with possession of less than one-half ounce of cannabis in violation of General Statutes § 21a-279a, breach of the peace in the second degree in violation of General Statutes § 53a-181, and interfering with an officer in violation of General Statutes § 53a-167a. The state subsequently nolled these charges.

[5] The trial court rejected the state's argument that, if the initial stop of the six individuals was unconstitutional because the anonymous tip was not sufficiently reliable to give rise to a reasonable suspicion of criminal activity, the defendant's subsequent conduct in ignoring the police commands to stop, walking away from the police and dropping the handgun in the garbage can, nevertheless constituted criminal activity warranting a stop. Citing this court's decision in *State* v. *Hammond*, 257 Conn. 610, 627, 778 A.2d 108 (2001), the trial court concluded that the evidence would have to be suppressed if the initial stop was illegal because the "disposal of the gun would not be sufficiently distinguishable from the illegal seizure and [was] in some sense the product of the illegal government activity." (Internal quotation marks omitted.) The state does not challenge that determination in the present appeal.

[6] In light of this conclusion, we need not address the defendant's contention that the anonymous tip did not give rise to a reasonable suspicion that criminal activity was afoot.

[7] The defendant also contends that, even if the anonymous tip was sufficiently reliable under *Navarette*, article first, §§ 7 and 9, of the Connecticut constitution embodies a more protective standard. We recently stated in *State* v. *Kono*, 324 Conn. 80, 123, 152 A.3d 1 (2016), that, "if the federal constitution does not clearly and definitively resolve the issue in the defendant's favor, we turn first to the state constitution to ascertain whether its provisions entitle the defendant to relief." In *Kono*, however, we had "no idea how a majority of the members of the United States Supreme Court would decide the issue." Id., 129. In the present case, we conclude that it is sufficiently clear, under the standard that we articulated in *Kono*, that the United States Supreme Court would conclude under *Navarette* that the anonymous tip did not give rise to a reasonable suspicion that the defendant was engaged in criminal activity. Accordingly, we decide the issue under the federal constitution and need not reach the defendant's state constitutional claims.

[8] Justice Scalia authored a dissenting opinion in *Navarette*, in which Justices Ginsburg, Sotomayor, and Kagan joined, arguing that the fact that the anonymous tipster had specifically identified the subject's vehicle "in no way makes it plausible that the tipster saw the car run someone off the road" and that the tipster's claim to eyewitness knowledge "supports *not at all* [the] veracity" of the tip. (Emphasis in original.) *Navarette* v. *California*, supra, 572 U.S. 407. The dissent further posited that the rationale underlying the excited utterance exception to the hearsay rule did not support the reliability of the tipster's report because she had "[p]lenty of time to dissemble or embellish," and that it was unclear whether that exception even applied in the absence of other proof of the alleged criminal conduct. Id., 408. The dissent also argued that the tipster's use of the 911 system proved "absolutely nothing . . . unless the anonymous caller was *aware* of [the] fact" that 911 callers can be identified, and that, even if the tip was reliable, a single instance of careless driving did not give rise to a reasonable suspicion of "*ongoing intoxicated driving.*" (Emphasis in original.) Id., 409–10; see also *Florida* v. *J. L.*, supra, 529 U.S. 272 ("[a]n accurate description of a subject's readily observable location and appearance" is not alone sufficient to establish reliability of allegation that subject had concealed weapon because "reasonable suspicion . . . requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person"). Because we conclude that the defendant in the present case can prevail even under the majority's analysis in *Navarette*, we need not consider whether we would find Justice Scalia's concerns to be persuasive in a state constitutional analysis.

[9] Because the issue is not before us, we express no opinion as to whether a report that an individual is in possession of a handgun gives rise to a reasonable suspicion that criminal activity is afoot for purposes of *Terry*.

[10] As we have explained previously, we assume, without deciding, that the *Navarette* standard applies outside the context of drunk driving and that the police need not independently corroborate the allegation that the suspect was engaged in illegal activity before initiating a stop if the other reliability factors are satisfied.

[11] In *State* v. *Hammond*, supra, 257 Conn. 623–24, this court concluded that the fact that the police corroborated the anonymous tipster's description of the alleged wrongdoers as two black males, one of whom was taller than the other, and one of whom was wearing a blue and white coat and the other of whom was wearing a blue and red coat, "added nothing to the reliability or credibility of the tip, but merely allowed the police to pinpoint

the persons who were the targets of the accusation." Thus, the court appears to have followed the reasoning of the court in *Florida* v. *J. L.*, supra, 529 U.S. 272, that "[a]n accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity." We note, however, that this line of reasoning was arguably overruled, or at least weakened, as a matter of federal constitutional analysis under the fourth amendment, by *Navarette* v. *California*, supra, 572 U.S. 399, when the court concluded that a detailed description sufficient to allow the police to identify the specific vehicle observed by the tipster, together with an allegation that the vehicle had been driven dangerously, was sufficient to give rise to a reasonable suspicion of drunk driving. See Note, "The Supreme Court—Leading Cases," 128 Harv. L. Rev. 119, 240 (2014) ("in [*Navarette*'s] wake the police may lawfully stop a person when someone else anonymously claims to be the victim of a crime by that person, despite lacking evidence that a crime even occurred"). This court also stated in *Hammond* that "[t]oo many people fit [the tipster's] description for it to justify a reasonable suspicion of criminal activity"; (internal quotation marks omitted) *State* v. *Hammond*, supra, 624; a remark that would appear to be inconsistent with the immediately preceding statement that the tip was sufficiently detailed to allow the police to identify the targets of the accusation. See id. In any event, regardless of the reasoning underlying this court's decision in *Hammond*, nothing in that case or in *Navarette* undermines the principle that an anonymous tipster's description must be sufficiently detailed and specific to allow the police to identify a particular individual or vehicle.

[12] In *J. L.*, the court concluded that the danger posed by firearms did not outweigh the possibility that an anonymous tip might be *false* for purposes of determining whether police had a reasonable suspicion that criminal activity was afoot. See *Florida* v. *J. L.*, supra, 529 U.S. 272. Even if we were to assume that *Navarette* tends to undermine that conclusion; see footnote 11 of this opinion; nothing in *Navarette* suggests that there is a "dangerous conduct" exception to the requirement that an anonymous tip be sufficiently detailed and specific to allow the police to identify a particular individual. In other words, if the only details reported by anonymous caller in *Navarette* had been that she had been run off the road by a Ford pickup, we find it unlikely that the court would have found that the police had reasonable suspicion to stop every Ford pickup in the vicinity merely because the caller had made an otherwise reliable allegation of dangerous conduct.

———————————————